AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California



**FILED**
6/8/2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY     vyc     DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Z13 Cellphone
Model: Unknown
With no other identifying numbers or features

Case No. 23MJ8438

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Moncerad Soto incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
    telephone         *(specify reliable electronic means)*.

Date: 06/07/2023

*Judge's signature*

City and state:     EL CENTRO, CALIFORNIA          HON. LUPE RODRIGUEZ, JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     Samsung Z13 Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Rodrigo MARTINEZ
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the period of May 2, 2023, up to and including June 2, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Samsung Z13 Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Rodrigo MARTINEZ
**(Target Device #1)**

**A-2:** Blue Motorola Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Daniel Ricardo BERNAL-Zabala
**(Target Device #2)**

**A-3:** Black Huawei Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Raul LOPEZ-Vasquez
**(Target Device #3)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Rodrigo MARTINEZ (MARTINEZ) for transportation of illegal aliens Ricardo BERNAL-Zabala (BERNAL) and Raul LOPEZ-Vasquez (LOPEZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from MARTINEZ and the Material Witnesses on or about June 1, 2023, incident to the arrest of MARTINEZ and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border

Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of

California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text

messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On June 1, 2023, at approximately 11:33 a.m., BPA A. Pena, who is assigned to the Highway Interdiction Team (HIT) and was working in the Remote Video Surveillance System (RVSS) room, observed two suspected illegal aliens swimming northbound across the All American Canal (AAC). BPA A. Pena observed that the suspected illegal aliens were approximately two (2) miles west of Imperial Irrigation District's (IID) Hydroelectric Drop 3. At approximately 12.35 p.m., BPA A. Pena observed the suspected illegal aliens exit the AAC, make their way northbound towards Highway 98 and stop a few yards south of Highway 98 to hide in some brush. BPA A. Pena relayed all this information to his fellow HIT Agents in the field.

11. At approximately 12.37 p.m., BPA J. Bourque observed a Dodge Challenger driving eastbound on Highway 98. Approximately one minute later, BPA J. Bourque observed the Dodge driving back westbound on Highway 98. BPA J. Bourque, who was driving an unmarked Service vehicle and was parked near the Drop 3 access road, drove his Service vehicle onto Highway 98 westbound. Approximately one minute later, BPA A. Pena observed the suspected illegal aliens exit the bush south of Highway 98 and run northbound across the highway. BPA A. Pena observed the suspected illegal aliens standing on the northside of the highway and the Dodge drove up to the suspected illegal aliens and stopped. BPA A. Pena observed the suspected illegal aliens enter the Dodge and the vehicle drove away westbound on Highway 98. BPA A. Pena relayed all this to HIT agents in the field.

12. At this time, BPA J. Bourque drove his Service vehicle in behind the Dodge and began to follow it. BPA J. Bourque continually updated HIT members of the location and direction of travel of the Dodge. BPA D. Davalos, who was driving a fully marked Border Patrol vehicle, drove westbound on Highway 98 and caught up to the Dodge. BPA D. Davalos activated his Service vehicle's emergency lights and siren to signal for the Dodge to stop. The Dodge stopped approximately one quarter of mile east of the East Highline Canal on Highway 98. BPA J. Bourque also joined BPA D. Davalos on the

vehicle stop. BPA D. Davalos approached the Dodge and identified himself as a United States Border Patrol Agent to the occupants of the vehicle. BPA D. Davalos questioned the driver of the Dodge, later identified as MARTINEZ, regarding his citizenship. BPA D. Davalos was able to determine that MARTINEZ is a citizen of Mexico who is a Lawfully Admitted Permanent Resident. BPA D. Davalos ordered MARTINEZ to exit the Dodge. MARTINEZ exited the Dodge and was detained in handcuffs by BPA D. Davalos. After MARTINEZ was detained, BPA J. Bourque identified himself as a United States Border Patrol Agent to the remaining occupants of the Dodge. BPA J. Bourque questioned the front seat and rear seat passengers of the Dodge, later identified as Ricardo BERNAL-Zabala, and Raul LOPEZ-Vasquez, and was able to determine that both were citizens of Mexico illegally present in the United States. MARTINEZ, BERNAL and LOPEZ were placed under arrest and were transported to the Calexico Border Patrol Station for further processing and interviews.

13. MARTINEZ was advised of his Miranda rights in the Spanish language by BPA D. Davalos and was witnessed BPA A. Mills. MARTINEZ stated he understood his rights and was willing to provide a statement without the presence of an attorney. MARTINEZ stated that he was born in and is a citizen of Mexico. MARTINEZ stated he is a Legally Admitted Permanent Resident of the United States. MARTINEZ stated that he responded to a job offer that was advertised in "El Clasificado." MARTINEZ stated that he would be paid $500.00 for each person he picked up. MARTINEZ stated that he drove down for San Bernadino, California yesterday and checked into a motel. MARTINEZ stated this morning he received a phone call and was told to go and pick the people up. MARTINEZ stated he drove out and picked up two individuals that were on the side of the road.

14. Material Witness BERNAL stated he was born in San Luis, Mexico and stated that he is a citizen of Mexico. BERNAL stated that he does not possess any immigration documents that would allow him to work or reside in the United States legally. BERNAL stated his wife made arrangements for him to be smuggled to the United States illegally for

$3,500.00. BERNAL stated that when the vehicle arrived, he got into the front passenger seat. BERNAL was presented with a six-pack photo line-up and was able to identify photo #1 as the driver of the Dodge. Photo #1 represents the principal, Rodrigo MARTINEZ.

15. Material Witness LOPEZ stated that his true and correct name is David GONZALEZ-Vasquez. (Record checks indicate his name is Raul LOPEZ-Vasquez.) LOPEZ stated he was born in Ensenada, Baja California, Mexico and he is a citizen of Mexico. LOPEZ stated that he does not possess any immigration documents that would allow him to work or reside in the United States legally. LOPEZ stated that he made arrangements to be smuggled to the United States illegally for $5,000.00. LOPEZ stated that when the vehicle arrived, he got into the backseat. LOPEZ was presented with a six-pack photo line-up and was able to identify photo #1 as the driver of the Dodge. Photo #1 represents the principal, Rodrigo Martinez.

16. During a search incident to arrest of MARTINEZ, BPA D. Davalos found a black Samsung Z13 cellphone (Target Device #1) in MARTINEZ's right hand. During a search incident to arrest of both Material Witnesses, BPA A. Pena discovered a cellphone inside each of their pant pockets: a Blue Motorola Cellphone (Target Device #2) belonging to BERNAL and a Black Huawei Cellphone (Target Device #3) belonging to LOPEZ. MARTINEZ, BERNAL and LOPEZ claimed ownership of their cellphone and the Target Devices were seized as evidence.

17. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on May 2, 2023, up to and including, June 2, 2023, the day after the arrest of MARTINEZ, BERNAL and LOPEZ.

# METHODOLOGY

18. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that MARTINEZ and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by MARTINEZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 7th day of June, 2023.

4:25 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**  Samsung Z13 Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Rodrigo MARTINEZ
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Blue Motorola Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Daniel Ricardo BERNAL-Zabala
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**      Black Huawei Cellphone
Model: Unknown
With no other identifying numbers or features
Seized from Raul LOPEZ-Vasquez
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the period of May 2, 2023, up to and including June 2, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.